You may begin, counsel. Thank you, Your Honors. Michael Berger from the Law Offices of Michael J. Berger. On behalf of the appellant, Chris Epsha. There are several presumptions that I think all apply in this case, but they've all been ignored in the prior decisions. First, of course, is the well-known presumption of giving a fresh start to a debtor. I think it's been suggested by the other side, well, that doesn't really apply in this case, that there's something wrong with this guy. Second is a presumption in favor of settlements. No one's really addressed that, but normally when you have something settled, you want it to remain settled. And in this case, we've got a settlement agreement that very clearly states that no one's admitting anything. I mean, how do you get around Archer v. Warner? I'm not sure which aspect you mean, Your Honor. Well, doesn't the Supreme Court say in these situations that the judge, the bankruptcy judge, can look through the settlement to what the underlying claim or conduct was? I don't mind that, Your Honor. I'm fine with looking through the settlement agreement. But that by itself goes against the idea that a settlement ends everything. I don't think I'm suggesting that you have to throw out every other fact because of that. I'm happy to look behind it, and I'm going to address, like, the underlying decisions, the underlying facts. But, again, I'm starting off just talking about presumptions, and I think it's presumed in this case, as it's presumed in all cases, that settlement agreements are a good thing, that we want to encourage it. We're certainly not setting aside the settlement agreement, Your Honor. We're looking at it, and we're looking at the other facts. And I guess somehow the courts have managed to ignore this and transfer this finding of liability to the LLC or from the LLC to the individual defendant. Should we just ignore the ALJ's findings of facts? Oh, absolutely not. No, I'm in favor of, as you said, looking through and looking at the cease and desist order and the ALJ's findings. But I think when you actually do that, and you have that in the supplemental excerpts of the record, you'll see that the sales of the securities and the violations were not done by my client, Chris Epshaw. So why did the ALJ order him to cease and desist? As manager of the LLC, Your Honor. Where do you get that out of the ALJ's decision? That it was purely because he was just happening to be the manager? Right. So the ALJ's decision, first of all, only addresses one of these individual LLCs. And, of course, there were others that the settlement included as well. But this was a case that was primarily against the entity that was selling the securities. The essence of the decision was, hey, there's something wrong with what's being done here. And you all seem very familiar with it. This LLC is secretly buying properties, marking it up, and selling it at a profit. And that is what was enjoined, that you can't do that anymore. And so anybody who was a managing member would say, hey, you can't do that anymore. But did the ALJ say that's why Mr. Epshaw was himself being ordered to cease and desist, because he happened to be the manager of this entity? No, Your Honor. That's not a quote from the decision. But nothing like a quote, right? Right, right. If you read every word of it, you'll see that it's pretty much all against the LLC, not against him. You won't find, like, you know, pages and pages. And we have the transcripts as well as the decision. And we have said in our brief, and I think you'll see that it's true, that this was really a case of an LLC selling securities. I mean, let me jump ahead. I was going to go through some presumptions. But to jump ahead, it's a bankruptcy case. I mean, it's all 523A19. And you need two things. You need a settlement and you need the securities violation. And you certainly got the settlement, so we're not disputing that. You had a settlement agreement. So the question is about the securities violation. And I contend, and I think the record reflects, that the problem here is there's a securities violation, but not by my client. To give you an example, I had another case involving driving drunk. And it was alleged that the defendant injured someone while driving drunk. Well, that also is an exception to discharge. Turns out that the client wasn't driving at all. It was the client's son. And so we got that case thrown out on a 12b6 motion because clearly the drunk driving has to be by the debtor. And I think that's the flaw here. There clearly was a securities violation, and that clearly was selling these unlicensed securities. But it wasn't the focus of those prior hearings. Is this a securities violation by Chris Epshaw? That's not what it was all about. No one's determined that, and they've sort of gotten a free pass. But if you look at the order, it specifically mentions Mr. Epshaw's name. And then the ALJ order is served on Mr. Epshaw, quote, as an individual. Then another separate order, same order, excuse me, served separately to Christopher P. Epshaw, managing member. So it's clear, at least to me, that the state of California was issuing this ALJ decision to both Chris Epshaw as a managing member, as you claim, then separately to Chris Epshaw as an individual. And his name is mentioned throughout the DNR order and then ultimately the ALJ order. So, I mean, given that, I mean, shouldn't we, isn't the fairest reading of it to say Mr. Epshaw has been named individually for violating securities law? Respectfully, no. I think it's going too far to take the proof of service. I mean, I'm on the proof of service of a dozen documents every day because I represent different clients, because I've expressed an interest in the case. Being on the proof of service doesn't establish a securities violation by the individual. You have to look at the order, too. I mean, that's further confirmation. Why would they, for random reason, just decide to send the same order to Mr. Epshaw as an individual? Just someone in the office decided to do that? I think that clearly confirms what the order itself says, which says Mr. Epshaw, Mr. Thompson, and Invesco. The DNR order is upheld against them. Well, I appreciate, you know, the questions and the comments because it gives me insight into the court's thoughts. But I do feel that it's taking too much. When you're going to deny someone's discharge, it's a serious thing. And to take that from like a proof of service and say, hey, your name appears there twice, you know, we established this in the bankruptcy court. The court that normally tries dischargeability issues is the bankruptcy court. But the judge here decided on the same sort of basis that you have, Your Honor. Well, you know, the proof of service says this, and he was the manager of that. But those cases were focused on stopping some, you know, violation that was perceived. Do you think there should be some kind of adverse proceeding in the bankruptcy court where the trustee is required to establish that, in fact, your client was involved in securities fraud? Well, it wouldn't be the trustee, but, yes, it would be the people of the state of California. I was very interested in hearing, you know, Mr. Kaczynski's argument. He talked about something being thrown out, you know, too soon. I think that's what happened here. The focus before really was not the individual conduct of Chris Epshaw and whether or not his discharge should be denied. There was no bankruptcy. There was no discharge. And we're trying to read the tea leaves and kind of infer whether or not there's been some finding of a personal violation. I don't think you can find that in the original cease and desist order. I think there's different, you know, parties, but that's something you could argue about. Or you could actually find out what happened in the bankruptcy case. It's not unusual for the bankruptcy court to try dischargeability cases. There's different reasons. Sometimes you'll say someone obtained money by fraud. That's not an allegation here. I mean, we've got basically a contractual agreement under the settlement agreement that we're talking about. But, yeah, I think that Judge Bluban, a very experienced, you know, fair judge, could make this decision if she allowed the matter to go forward. But, again, this was determined at the earliest stage, which kind of brings to this question what do we do with res judicata and collateral estoppel. If we assume that it's discretionary and, you know, you could apply it or you couldn't, you'll see there were a bunch of different parties who aren't here anymore, like the LLCs and another individual. They're not involved in all of this discharge of debt issue. I think that maybe the biggest presumption is that the statute means what it says. And the statute is clear that you need to find some violation of securities by this debtor, just like you had to have that one drunk driving. And we're kind of inferring it here from proofs of service or a caption or little bits here and there. But you could actually get the right answer. And it's a matter of, you know, millions of dollars and a matter of public policy. I'm going to reserve the rest of my time. All right, thank you, Counsel. Good morning, Your Honors. May it please the Court, William Horsey for Appellee People, the State of California, Department of Business Oversight. The arguments that were just made don't satisfy the facts as set forth in both the desist and refrain order and the administrative law hearing. And here we are for the third time where Mr. Epshaw is giving the opportunity to try and contest. He's trying to get a third bite at the apple. He had a previous chance to contest the question of whether there were not one but two securities violations, a violation of California Corporations Code 25110, which is the selling of unregistered or non-exempt securities, and 25401, which involved misrepresentation or misstatements with regard to the sale of said securities. The desist and refrain order, if you look at the desist and refrain order, was specifically as to Mr. Epshaw, Mr. Thompson, and Invesco Management and Development.  Mr. Epshaw, they contested the issues of the desist and refrain order, and there was a three-day hearing in which Mr. Epshaw was represented by counsel. And in the course of that three-day hearing, the Court found, specifically referring to paragraphs 8 and 9 of the administrative decision, that Epshaw was the control person of Invesco Management and Development and formed and managed each of the two developments, the Land Co. LLCs, and then the subsequent AVs. And in the situation, for instance, with regard, and the Court describes this specifically, Land Co. purchased the property that formed the corpus of AV 12 for $207,000 in August of 2007. Then they turned around and sold that property to the AV 12, which was also managed and controlled by Mr. Epshaw, for $375,000. And then they turned around and capitalized that, where they convinced people to invest their 401ks, their retirement funds, into this, and they ended up taking approximately $870,000 for that Invesco LLC. And Mr. Epshaw is not completely innocent, as the administrative law judge noted. Mr. Epshaw, acting as managing director of IM&D, spoke to an investor who testified at the administrative law hearing and reinsured him the investments gave the people an opportunity for a cooling-off period to revoke their investment. An investor by the name of Juan Rodriguez testified he wanted to revoke, and Mr. Epshaw called and talked him into not doing that. Now, the Sarbanes-Oxley Act is what provided – Before you talk about Sarbanes-Oxley, can I interrupt you and ask you a question? Sure. You talked about how there are two bases for the proceedings in the administrative agency, the unregistered securities and the misrepresentations. Exactly. For purposes of the non-dischargeability provision in the bankruptcy code, is either one of those good enough, or does it have to be the misrepresentations? I think either one would be good, Your Honor. If you look at the statute. Both are securities law, right? Both are securities violations. One is just the sale of non-registered or non-exempt securities, which is the violation, and the other is making misrepresentations to investors in the sale of these. Now, with regard to Sarbanes- Can I just ask a question? Sure. In distinguishing TELUS, are you relying on just – you're not just relying on settlement agreement in the language there. Are you relying on it at all? As Judge Cannelli noted, TELUS – actually, it's TILS.  It's TILS. We miscited it in the brief, so I apologize. It's actually TILS. But the TILS case actually stands for the – Right. I apologize, Your Honor. The TILS case actually stands for the proposition that you can look behind the facts of the settlement agreement to the entire picture, and that's similar to what Archer stood for as well. You look at the underlying basis of the settlement. And in this situation, we have, as Mr. Berger conceded, we have a debt, and the court utilized the collateral estoppel to deal with the question of securities violation. And the Sarbanes-Oxley – one of the rationales for Sarbanes-Oxley and the enactment of this 523A19 was after the Enron scandal, when some of the people who had gotten ill-gotten gains as a result of Enron sought to discharge their debts through bankruptcy. And so that's why this section was enacted. The comment, which was referenced in our pleading papers, noted that under current state laws prior to Sarbanes-Oxley's amendment, state regulators were often required to reprove their fraud cases in bankruptcy court to prevent discharge because remedial statutes have different technical evidence elements and analogous common law costs of action. And they also noted that settlements may not have the same collateral estoppel effect. So the court noted that, in short, with resources already stretched to the breaking point, state regulators must plow the same ground twice in securities fraud cases. By ensuring state law securities judgments and settlements in state cases are non-dischargeable, precious state resources would be preserved and directed towards preventing fraud in the first place, which is what my department attempts to do. The public policy behind the utilization of the administrative law hearing and the findings of fraud are completely consistent with that comment. And with regard to the question that was raised about giving a fresh start to a debtor and the discretion by the court in utilizing offensive collateral estoppel, that's decided on an abuse of discretion basis. And there's nothing in this record that shows that the judge below abused discretion in deciding to apply the collateral estoppel aspect of this case. The presumption, the argument that Mr. Ebshaw did not sell the securities is something that is not particularly relevant to this situation because he was the person, along with Mr. Thompson, put together this scheme in its entirety. The factors of collateral estoppel are completely met here. The prior issue that was decided at the administrative law hearing was the same issue that was decided here. Securities, not one, but two violations of the California securities code. The issue was actually litigated and necessarily decided. The early decision was final and resolved the issue on the merits, and it occurred between the same parties. So that is, you know, when you look at this, in short, Congress, in enacting this section, felt this section was necessary to preserve the state resources and not require my department to relitigate this matter and to then call in. There were 443 investors in the various 15 LLCs. By using the collateral estoppel, which addressed this issue, we are able to preserve the state resources and put our efforts toward preventing similar type issues in the future. The section required a violation of state securities laws, which we argue was established clearly by the administrative law decision, which was then relied upon by the court in the collateral estoppel, and that the debt resulted from the settlement that was entered into by Mr. Ebshaw. As such, the requirements of Section 523.819 were completely satisfied, and the debt should not be dischargeable. I would argue that the summary judgment was properly granted. All right. Thank you, counsel. Thank you, Your Honor. So one of the things that I heard opposing counsel say is that it's not relevant that Mr. Ebshaw didn't sell the securities. I don't follow that. I mean, they've got two arguments, and one is that that was the violation, that Mr. Ebshaw sold securities. The other one is that there was some sort of fraudulent representation. So that's like one of two blocks of holding the whole case. And, in fact, it's undisputed that he didn't sell the securities. So that block just isn't there. It kind of pulls out a basis of the case. And a point that wasn't addressed in my argument I want to make here, it's very troubling to me that you've got an allegation of a securities violation of representation to one investor. You've got a settlement that makes reimbursement for 453 investors, and we're saying it's the same thing. The damages for this first alleged representation, you know, might have been 50 or 100 grand, and I guess you try and compute what the numbers would be. It would be something very small. The liability that is taken on by the settlement is millions of dollars, and that's done contractually. So it seems to be sort of a disconnect. Again, to go back to drunk driving, if you, drunk driving, bend someone's license plate frame, it doesn't mean you killed 453 people. Even if there was a finding that there was some securities violation by one representation in one case with one investor or with one of these LLCs, I don't see how that makes this hold that non-dischargeable. That wouldn't work for the sale of unregistered securities, right? Either they're registered or they're not. Right. You know, if you've sold unregistered securities individually, correct, then you would have a securities violation. No, no, no. The point being how do you extrapolate from 1 to 450, whatever it is? I mean, if you sold unregistered securities, you sold unregistered securities, and if the ALJ just was talking about one situation, how does it make a difference if the settlement agreement goes beyond it as to that particular issue? Either they're registered or they're not, and they weren't. I agree that securities were either registered or not, and I agree that they were not. I think the question here is damages. He has taken on some liability that's totally unrelated to any decision that this ALJ made. I guess, again, you're breaking it in two, so it sounds like you're maybe giving me the second part. If you had one investor say that I got a representation that was false, that doesn't mean that we don't have to hear for 450 other investors. I mean, I could ask you questions about that, too, but I don't want to take up all your time. But my point is the bankruptcy court didn't look into any of that. They found that there was some violation, and so they've kind of rubber-stamped the settlement agreement measure of damages, which is totally unrelated to the securities violation. Again, I am not saying you shouldn't look at the underlying administrative law decision. I'm not saying you shouldn't look at cease and desist. I'm actually encouraging the court to do what it's doing, which is to look at the underlying facts. But I think that you also need to see, well, what facts have been established that support this damages. We've got a contractual agreement that he's going to make up 70 percent of the losses for investors, but we have no evidence that was presented at these hearings. We've got no findings. You've got nothing to back up this representation. So they're kind of getting a free ride and never having to have a trial, never having any discovery on judgments that I guess would potentially be in the millions of dollars and prevent my client from ever getting a fresh start. That's it. Thank you, Your Honor. All right. Thank you, counsel. EPSHA versus the people of the state of California is submitted.
judges: Wardlaw, Kennelly, Lee